Attachment A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### CLARKSBURG DIVISION

BENJAMIN JOSEPH CRISANTOS,

    Plaintiff,

    V.

ROBERT SIMS, CORRECTIONAL OFFICER,
JOSHUA SINES, CORRECTIONAL OFFICER,
BRYAN M. ANTONELLI, WARDEN,
JOHN GILLEY, COMPLEX CAPTAIN,
ERIC HOWELL, DEPUTY CAPTAIN,
D.J. HARMON, REGIONAL DIRECTOR,
MICHAEL CARVAJAL, CENTRAL OFFICE
DIRECTOR OF THE BUREAU OF PRISONS,
AND SEVERAL UNKNOWN STAFF ET.AL.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \*

" AMENDED "

## FEDERAL CIVIL RIGHTS COMPLAINT (*BIVENS* ACTION)

Civil Action No.: 1-21-CV-00039-JPB-
*(To be assigned by the Clerk of Court)*

WITH JURY TRIAL DEMAND

FILED

MAR 1 1 2022

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

## I.    JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).** The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.    PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

    A.    Name of Plaintiff: Benjamin Crisantos    Inmate No.: #13665-030
        Address: P.O. Box #2068 or 1197 Airport Road
        Inez, kentucky 41224

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

**Attachment A**

B.    Name of Defendant:  Mr. Robert Sims
      Position:  Federal Correctional officer
      Place of Employment:  Federal Bureau of Prisons, Depr't of Justice
      Address:  1786 Deer haven Road
       Bruceton Mills, West Virginia 26525-5723

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: The incident took place at U.S.P. Hazelton, while the defendant was working his post, while he was either corridor or compound Officer, strickly prohibited to enter any Housing Unit, due to similar conduct.

B.1   Name of Defendant:  Joshua Sines
      Position:  Federal Correctional Officer  U.S.P. Hazelton
      Place of Employment:  Federal Bureau of Prisons, Dep't. of Justice
      Address:  1640 Skyview Drive
       Bruceton Mills, West Virginia 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain:  This incident took place at U.S.P. Hazelton, while the defendant was working at his post, either as the Corridor or Compound officer, and was strictly prohibited to enter a housing unit in the company of officer Sims, due to simalar conduct between the two  defendants.

B.2   Name of Defendant:  Mr. Bryan M. Antonelli
      Position:  Executive Officer Warden of the Complex  USP Hazelton
      Place of Employment: Federal Bureau of Prisons
      Address:  1640 Skyview Drive
       Bruceton Mills, West Virginia 26525
Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: As an Executive officer, the defendant was well aware about his employees prohibited conduct, who specifically relies upon plaussible deniability about defendants Mr. Sims and Mr. Sines conduct, who was reprimanded maltiple times for the exact type of brutality against inmates, but allowed them to stay

B.3   Name of Defendant: Mr. John Gilley
Position: Complex Correctional Captain USP Hazelton
Place of Employment: Federal Bureau of Prisons Dep't. of Justice
Address: 1640 Skyview Drive
Bruceton Mills, West Virginia 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

If your answer is "YES," briefly explain: The defendant was well aware of his custody service officers brutal tactics as well as his Lt's under his control, and turns a blind eye, due to the (AFGE) Union's agreement with the ("BOP") agency, and personal dislike of("DOJ") regulations, in which plaussible deniability is employed.

B.4   Name of Defendant: Mr. Eric Howell
Position: Deputy Captain USP Hazelton
Place of Employment: Federal Bureau of Prisons Dep't. of Justice
Address: 1640 Skyview Drive
Bruceton Mills, West Virginia 26525

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes   ☐ No

If your answer is "YES," briefly explain: The defendant had direct participation and disciplinary authority to remove both defendants Sims and Sines, and refused to relieve them of their duties due to political influences by the ("AFGE") Union, and the above defendant 's personal views towards ("DOJ") prohibitions against brutality.

**B.5**   Name of Defendant: ___David J. Harmon___
Position: ___Mid-Atlantic Regional Director___
Place of Employment: ___Federal Bureau of Prisons Dep't. of Justice___
Address: ___302 Sentinal Drive ("Suite #200")___
___Annapolis Junction, Maryland 20701___

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?   ☒ Yes      ☐ No

If your answer is "YES," briefly explain: ___The above defendant has been___ ___on notice while he was a Captain, Associate Warden, Warden and other___ ___positions within the Bureau of Prisons, that a culture of violence___ ___existed against Federal Inmates, and turned a blind eye to employee___ ___abusive conduct, and entered agreements with the ("AFGE").___

## III.   PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution: ___United States Penitentiary Big Sandy___

**A.**   Is this where the events concerning your complaint took place?
☐ Yes      ☒ No

If you answered "NO," where did the events occur?
___United States federal penitentiary hazelton___

**B.**   Is there a prisoner grievance procedure in the institution where the events occurred?   ☒ Yes      ☐ No

**C.**   Did you file a grievance concerning the facts relating to this complaint in the prisoner grievance procedure?
☒ Yes      ☐ No

**D.**   If your answer is "NO," explain why not: ___If any dispute whether an___ ___exhaustion was not completed, is due to official interference that___ ___makes compliance impractible, because of staff retaliatory conduct___ ___at all Bureau facilities as a practice and custom.___

**E.**   If your answer is "YES," identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed

and state the result at level one, level two, and level three.  **ATTACH GRIEVANCES AND RESPONSES:**

LEVEL 1 ___BP-9 dated September 19, 2019. Informational Purpse___

LEVEL 2 ___BP-10 dated November 5, 2019. Informational Purpose___

LEVEL 3 ___BP-11 datedMarch 3, 2020., Informational Purpose___

IV.   <u>PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES</u>

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?          ☐ Yes          ☒ No

B.   If your answer is "YES", describe each lawsuit in the space below.  If there is more than one lawsuit, describe additional lawsuits using the same format on   a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

1.   Parties to this previous lawsuit:

Plaintiff(s):_____N/A_____

Defendant(s):_____N/A_____

2.   Court: _____N/A_____
*(If federal court, name the district; if state court, name the county)*

3.   Case Number:_____N/A_____

4.   Basic Claim Made/Issues Raised: _N/A_____
_____N/A_____
_____

5.   Name of Judge(s) to whom case was assigned:
_____N/A_____

6.   Disposition: _____N/A_____
*(For example, was the case dismissed?  Appealed?  Pending?)*

7.   Approximate date of filing  lawsuit:_____N/A_____

8.      Approximate date of disposition. Attach Copies:____N/A_____

C.      Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?
    ☐ Yes  ☐ No

D.      If your answer is "YES," briefly describe how relief was sought and the result.  If your answer is "NO," explain why administrative relief was not sought.
    Plaintiff has never filed a complaint before the present case before the court.

E.      Did you exhaust available administrative remedies?
    ☐ Yes  ☐ No

F.      If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion.  If your answer is "NO," briefly explain why administrative remedies were not exhausted.
    Had no "Basis before now to file remedies, yet, did complete the remedy process on this complaint, which the Bureau of Prisons sole response was for informational purposes only under case number #987206-A1.
    SEE ORGINAL COMPLAINT FOR THEIR RESPONSE:

G.      If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  Describe each civil action or appeal.  If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

1.      Parties to previous lawsuit:

      N/A

Attachment A

Plaintiff(s): _____

Defendant(s): _____

2.   Name and location of court and case number: _____

_____

_____

_____

3.   Grounds for dismissal:   □ frivolous   □ malicious
     □ failure to state a claim upon which relief may be granted

4.   Approximate date of filing lawsuit: _____

5.   Approximate date of disposition: _____


## V.   STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights.* **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** *Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph.* **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)**

CLAIM 1: _____ On March 21, 2019., at approximately 7:00 P.M., the plaintiff paid a visit with two of his friends who was was hanging out inside their cell in E-1 Cellblock, wear Mr. Crisantos was discussing a drawing project with his fellow inmates when defendant Sans appeared at the door.


Supporting Facts: _____

2.   On March 21, 2019., defendant Sines compound officer, entered the cell door in E-1 Unit whereas the plaintiff was socializing, and ordered all inmates to exit the cell for an search, and once outside all inmates was ordered to assume the position on the wall.

3.   On March 21, 2019., while defendant Sines was pat searching the other two inmates who was in the room with the plaintiff, co-defendant Sims appeared upon the scene, and ask if all inmates have been searched.

4.   On March 21, 2019., defendant Sines informed co-defendant Sims, that the plaintiff was to be escorted to the E-1 Unit Team hallway to be stripped searched for contraband due to Mr. Crisantos supposed attitude.

5.   On March 21, 2019., the plaintiff was escorted by defendants Sines and Sims to the E-1 Unit Team complex, where he feared these two correctional staff was up to no good, and made a point to look at their name tags, just in case there was somekind of underhanded reason he was unfairly being targeted.

6.   On March 21, 2019., defendant Sims directed the plaintiff to enter the staff restroom, then stand in the far right corner, which Mr. Crisantos complied.

7.   On March 21, 2019., defendant Sines ordered the plaintiff to hand over his beanie-cap, then twisted it into a fist, and started screaming at Mr. Crisantos, by stating:

ATTACHMENT-A

A. Defendant Sines:

I was only going to give you a pat down [sic];

I don't five a fuck, that you looked at our names, you're being disrespectful. [sic]:

B. Inmate Crisantos:

Please could you lower your voice, I can hear you very well, and i'm not being an disrespectful person, where is all this coming from;

A. Defendant Sines:

If you want to go on ahead and hit me [sic];

B. Inmate Crisantos:

I'm not that stupid enough to do that sir.

A. Defendant Sines:

You ann't shit boy;

B. Inmate Crisantos:

Well the same to you man, because I am not that crazy to give you an excuse.

21. On March 21, 2019., defendant Sines turned to his left, looked at his co-defendant Sims, and siad fuck-it, then defendant Sims punched the plaintiff in the side of his face, and

ATTACHMENT-A

defendant Sans joined in the attack, were they struck Crisontos
with fist, and their steel toed boots about his face, back and
stomack-chest areas, while the plaintiff attempted to protect
his vital areas both defendants was attempted to disable Mr.
Crisantos ability to have children.

22.   On March 19, 2019., Officers Sines and Sims
called for emegency assistance, then handcuft the plaintiff who
was almost unconcience, and placed the restraints on so tight,
and was pulling him off the floor with his hands tide behing his
back, felt like something broke in his back area.

23.   On March 21, 2019., several correctional
staff responded to the body alarm one of the defendants had in
an effort to disquise their activities at E-1 Unit.

24.   On March 19, 2019., An evening Watch Senior
Operation Lieutenant appeared on the scene of this incident, and
when he viewed plaintiff's condition, order other correctional
employees to transport Mr. Crisantos to the medical department
on a stretcher.

25.   On March 21, 2019., When plaintiff arrived
at the Prison medical department , the duty physician assistant
examining Mr. Crisantos injuries recommended to the operation
Lt. on duty, that the plaintiff needed to be transfered to the
local area outside hospital, because of the external and thereby
unknown internal injuries he had sustained could not be handled

ATTACHMENT-A

at the institution, as a result they was too extensive.

26.   On March 21, 2019., Plaintiff was transported to Morgantown Medical center by ambulance for treatment.

27.   On March 21, 2019., Upon arrival at Morgan town Medical center, the emergency room doctor on duty took only "one" look at the plaintiff, then had him admitted as a patient, from the following external injuries;

A.   Large hematomas to both eye sockets;

B.   Lacerations in the upper lateral comer of each eye socket;

C.   Laceration through the upper lip;

D.   Left lateral eye socker fractured;

E.   Facial contusions;

F.   Fractured L2 vertebray

G.   Acute Kidney injury;

H.   Multiple abrasions to head, neck, front, and upper back area.

I.   Severe rectum bleeding;

J.   Chipped tooth.

28.   On March 23, 2019., plaintiff was removed from Morgantown Medical Center, and transferred to Cumberland ("FCI") in Maryland.

29.   On March 23, 2019., unknown correctional staff escorted the plaintiff through the hospital on foot, in which Mr. Crisantos informed those employees, that he was unable to walk, and he hurt very badly.

30.   On March 23, 2019., one of those correctional employees told the plaintiff if he had any other thing to say, to do so now, which Mr. Crisantos told those cops, he was not able to bend over or lift his legs, do to his injuries.

31.   On March 23, 2019., A hospital nurse viewing the above stop those officers, and told them, they had to follow hospital policies, and escort Mr. Crisantos while seating within a wheel chair, not walking.

32.   On March 23, 2019., Once at the transport Van, the plaintiff again told these two unknown defendants, that he was not able to walk inside the truck, however, one of those officer's siad that either Mr. Crisantos make the effort, or will be forced to comply.

33.   On March 23, 2019., upon the plaintiff'a arrival to ("FCI") Cumberland, Mr. Crisantos was removed from the security Van, and forced to walk in his condition to the facility Shippping and Recieving Department.

34.   On March 23, 2019., plaintiff was forced to submit to a strip search and X-ray search, despite his condition,

and when he complained about the necessity to make an seriously injured inmate to this protocal, the officers said they are only adhering to procedures, its above their grade-pay.

35. On March 23, 2019., plaintiff was forced to wait several hours inside a security room, and lay upon a concret block until staff decided to escort his to the ("FCI") Special Housing Unit.

36. On March 23, 2019., medical department staff did an intake review upon the plaintiff, based upon standard type operational procedures, in which Mr. Crisantos told the Nurse he was in serious pain, and was not able to submit to the BOP Security strip searching exercise, due to his back and head injuries.

37. On March 23, 2019., A Nurse told plaintiff that he would haft to submit to these security measures, despite his injuries, because executive staff exspect file employees to comply with security policies, regardless whether it harms any inmate or not, and its above her pay-grade to overrule the BOP Agency rules and regulations.

38. On March 23, 2019., the plaintiff was told he was being placed into the special housing unit, based upon his custody level and past records.

39. On March 23, 2019., plaintiff was escorted to the special housing unit, despite his protest he needed some kind of transportation because he was in serious pain, however,

the nurse told the officers he would not require a wheelchair at that time, because the Warden said nobody was to be issued one, unless they are completely ambulent.

40. Between March 23, 2019., and October 2019, the plaintiff was forced to cell rotate between rooms every ("21") days, and regardless each time the plaintiff informed the special housing Lieutenant of the pain and suffering he was experiencing by being forced to move around from one cell to the next seven consecutive times was harming his ability to heal.

41. Between March 23, 2019., to October 2019., the special housing unit lieutenant informed plaintiff that he was only following orders from the Warden, who is required to enforce an agency memorandum issued from Central Office.

42. On or about October 2019., the plaintiff was trnasferred out of ("FCI") Cumberland, and taken to the Federal Bureau of Prisons Oklahoma Transfer Center.

43. Between October and November 2019., plaintiff was again transferred from Oklahoma Transfer Center to ("FCI") Atlanta, Georgia., holdover Unit, in which he informed them about his current circumstances.

44. On or about June of 2019., the plaintiff went to take a seat, and once in the chair, a hernia popped out of his belly-button, as a result of the assualt committed upom him.

ATTACHMENT-A

45.  Prior to the above, and continuing from
("1987") to present date, the defendants Carvajal, Harmon,
Antonelli, and those unknown past and present, entered into
a series of collective bargaining agreements or memorandum
of understandings to take counter-measures against prisoners
who are gang related or associated to those organizations so
employees would have a more discretion to control convicts
under their supervision, in which the defendants collectively
and at seperate times agreed to repeal the following agency
regulations:

A.  28 ("CFR") §541.10(b)(4);

B.  28 ("CFR") §541.10(b)(5).

46.  Between ("1987") to ("2019"), and there
after defendants Carvajal, Harmon, Antonelli, and those known
and unknown entered an memorandum of understanding with those
("AGGE") Counsel of Prison Locals to reframe from entertaining
minor assualt charges against ("BOP") employees acting on the
orders of their supervisors.

47.  Between ("1992") to ("1996"), the defendants
Carvajal, Harmon, Antonelli, and those unknown past or present
entered into a bargain with the American Federation of Government
Employees Union to seek the passage of the Prison Litigation
Reform Act of ("1995"), the ("BOP") sponsored.

48.  Between ("1995") to ("1996"), the defendants Carvajal, Harmon, Antonelli, and those unknown or known past and present entered into another clandestine meeting to talk about and present an amended repeal of the ("PRLA") Act, behind the ("AFGE") demands to eliminate obligations imposed upon any federal employee in regards of the Administrative Remedy Law component, the Union did not want, to the disadvantage of all inmates, as a means to allow staff to manipulate the system, and undermine the purpose of the Regulation, and the Prison Litigation Reform Act.

49.  Between ("1995") to ("2021") the defendants Carvajal, Harmon, Antonelli, and those known and unknown from the past has operated on a prohibited act merit system where staff has to show a willingness to circumvent the law as any means possible in order to achieve promotions and rank within the Federal Prison Agency.

## VI.
## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

50.  The actions of defendants Sines and Sims in using physical force against the plaintiff without need or any provocation and, done maliciously and sadistically constitutes cruel and unusual punishment in violation of the Eighth Amend

ATTACHMENT-A

ment to the Constitution and Laws of the United States.

SECOND CAUSE OF ACTION:

51. The actions of defendants Howell, Gilley, Antonelli, Harmon, Carvajal and those unknown who allowed both defendants Sines and Sims the discretion to force inmates into unsupervised strip search procedures while plaintiff was under a severe disability caused by defendants deliberate indifference to inmate safety violates Mr. Crisnatos rights under the 8Th Amendment to the Constitution and Laws of the United States.

THIRD CAUSE OF ACTION:

52. The actions of defendants Carvajal, Harmon, Antonelli, Gilley, Howell and those unknown past and present in failing to take pro-active disciplinary proceedings "or" criminal prosecutions against federal employees known physical abuse occuring Nationwide against wards of the government, due to unlawful collective bargaining agreement or memorandums of understanding between the agency and the Union that constitutes deliberate indifference to plaintiff's safety and was approximate cause of the above Eighth Amendment violation of the Constitution and Laws of the United States.

ATTACHMENT -A

FOURTH CAUSE OF ACTION:

53.  The actions of defendants Harmon, Carvajal, and those unknown transfering the plaintiff to another violent Federal Penitentiarywhen they knew or should have known that the American Federation of Governmen Empoyees Union Organization uses a networking scheme to campaign indirect threats, coercion, harrassment and intimidation acts or omissions against inmates who have a potential liability case against Union members its charter guarantess affirmative action to thwart, constitutes deliberate indifference to plaintiff's safety and medical needs in violation of the Eighth Amendment abd Laws of the United States

FIFTH CAUSE OF ACTION:

54.  The actions of defendants Carvajal, Harmon, Antonelli, and those unknown in implementing a security strip-search policy, that requires those with serious physical injuries to comply with an exercise they knew or should have known could or would incite further injury, pain and suffering in a manner that is designed to punish the plaintiff and others in violation of the Eighth Amendment under the Constitution and Laws of the United States.

ATTACHMENT-A

## VII.

<u>PRAYER FOR RELIEF REQUESTED</u>

Wherefore, the plaintiff prays that this court will grant the following relief at bar:

## A.   <u>ISSUE A DECLATORY JUDGMENT STATING THAT:</u>

1.   The physical abuse of the plaintiff by the two defendants Sines and Sims violated Mr. Crisantos Eighth Amendment rights under the Constitution and laws of the United States, amounting to an assualt and battery under federal law.

2.   Defendants Carvajal, Harmon, Antonelli, Gilley, Howell and those unknown failure to take corrective action to curb the violence against federal prison inmates violated plaintiff's rights under the Eighth Amendment and Laws of the United States was the approximate cause of the assualt and battery upon Mr. Crisantos, by turning a blind eye to this prohibited practice and custom due to unlawful collective bargaining with an rogue public sector organization.

3.   The enforcement of a antiquated security policy of which requires inmates to submit to strip searches after being severely injured during an assualt without any kind of real penological interest is unconstitutional under the Eighth Amendment and Laws of the United States, in light of the fact that the agency has advance technology that was intended to

ATTACHMENT-A

eliminate staffs obligation have direct contact with prisoners
in the wake of the prea program.

      4.  The actions of defendants Carvajal, Harmon,
and those unknown in failing to transfer plaintiff to a medical
facility, and provide adequate medical aftercare to plaintiff
who was placed on a transient run that lasted almost three months
without penological interest, then replaced into a Penitentiary
to enable the ("AFGE") Union opprotunities to retaliate upon
Mr. Chrisantos or attempt to use surrogates denied plaintiff the
right to be free of further cruel and unusual punishment impose
under the fiction of security.

      5.  The actions of defendants Antonelli, Gilley,
Howell and those unknown in failing to correct defendant Sans or
Sims unlawful conduct they have been aware about for more than a
two year period or more, that was more than liekly the cause of
the same that encourage the continuation of those defendants or
others misconduct.

B.  <u>ISSUE AN INJUNCTION</u>:

      1.  Prohbiting retaliatory conduct upon the
inmate providing legal assistance to the plaintiff, or Mr.
Chrisantos himself, that includes, but does not exclude access
to the Law library, copy machine and other legal aids available.

ATTACHMENT-A

2.   Prohibiting the obstruction, delaying or harrassment of plaintiff's legal mail, whether it involve out going or incoming correspondence from the courts or a lawyer who may be appointed by the court, that does not includes, but does not exclude that prohibition against staff photcopying or retaining copies of the defendants or courts motions, or orders and contents of the envelop itself, based upon the prohibited practice and custom the the current administration.

C.   <u>AWARD OF COMPENSATORY DAMAGES</u>:

1.   $250,000 dollars jointly and severally against defendant Sines and Sims for the physical beating and emotional injuries sustained as the result of the unwarranted attack upon the plaintiff.

2.   $250,000 dollars jointly and severally against defendants Carvajal, Harmon, Antonelli, Gilley, Howell, and those unknown for the physical abuse and emotional injuries sustained, as a result of the practices and customs of Bureau of Prison Executives turning a blind eye to employee misconduct against inmates due to unlawful collective bargaing units with the American Federation of government employees Union, that has lead to and was the approximate cause of the assualtive bevavior upon the plaintiff.

ATTACHMENT-A

3. $100,000 dollars jointly and severely against defendants Carvajal, Harmon, Antonelli, Gilley, Howell, and those unknown for their failure to observe inmate rights under policies, regulations and precedents of the courts under the Eighth Amendment and Laws of the United States by collectively bargain away Civil rights of the plaintiff, that was the approximate cause of staff assualtive conduct and plaintiff's pain and suffering thereafter to apease a public sector union's political whims or caprices on policy preferences.

D. <u>AWARD OF PUNITIVE DAMAGES</u>:

1. $50,000 dollars jointly and severally against defendants Sines and Sims each for their intentionally violating Mr. Chrisantos civil rights and their duty under the law.

2. $50,000 dollars jointly and severally against each defendant Carvajal, Harmon, Antonelli, Gilley, Howell, as well as those unknown for allowing defendants Sans and sims to violate Mr. Chrisantos civil right, as a result of unlawful collective bar gaining with an outside public sector union, that undermine agency Statutes, Ruls and regulations to the contrary

3. $250,000 dollars jointly and severally against defendants Carvajal and Harmon for instituting and enforcing security policies they knew or should have known would cause inmate harm in the event of serious bodily harm to a prisoner.

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate.  Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at (USP) BIG SANDY         on 3/9/22        .
          (Location)            (Date)

*Benjamin Crisantos*
Your Signature